SWANSON, APPELLANT, *v.* SWANSON, APPELLEE.

(No. 33756—Decided January 22, 1976.)

*Mr. Richard M. Harmody,* for appellant.
*Mr. John D. Cannell,* for appellee.

JACKSON, J. This action was commenced on April 24, 1972, with the filing of appellant's complaint for divorce. Throughout the next two years numerous pleadings were filed and several hearings were had upon various matters in

issue. Ultimately, after the appellant's complaint had been withdrawn, a cross-complaint for divorce filed by the appellee was granted and final judgment was entered on May 30, 1974.

By that judgment a document—whose purpose and effect was disputed—was held to be an enforceable separation agreement and incorporated into the judgment entry; and the appellant was ordered, *inter alia,* to pay the appellee additional alimony for attorney's fees totaling $12,380.-40. From that final order appellant has assigned five errors.

## I.

The appellant, seeking the reversal of that portion of the May 30, 1974, judgment in which the court incorporated and adopted as part of its entry the alleged separation agreement, has assigned the following as error:

"2. A unilateral contract does not come into existence until one party to it has done all that is necessary on his part; it is performance by one party which makes obligatory the promise of the other."

This assignment of error is without merit and is hereby overruled. An examination of the record below indicates that in a hearing commencing May 21, 1973, and ending May 29, 1973, evidence was presented upon the nature and effect of the purported separation agreement. The appellant, while admitting he ultimately signed the document entitled "Separation Agreement", presented testimony which, if believed by the trier of fact, would indicate that while negotiations took place, no settlement was effected. The appellee and her attorney contradicted this testimony and presented evidence which, if believed, would establish that an oral settlement was made between the parties and that this settlement was subsequently reduced to writing and signed by both the parties.

After considering the disputed evidence, the trial court found for the appellee, concluding that there had been an oral settlement agreement and that such agreement had been reduced to writing and executed by both the parties. In light of the conflict of evidence which would allow reasonable minds to reach different conclusions upon the issues of

fact, the decision of the trial court must be affirmed. *E.g.*, *Pokorny* v. *Local 310* (1973), 35 Ohio App. 2d 178, *rev'd on other grounds* (1974), 38 Ohio St. 2d 177.

Nor can appellant prevail upon alleged errors of law. Even if the oral separation agreement itself could not be proved because of the statute of frauds, the document entitled "Separation Agreement", which was signed by both parties, would constitute a sufficient note or memorandum to allow proof of the original agreement under R. C. 1335.-05. Similarly, even if the appellant were correct in arguing that the signed separation agreement was unenforceable for want of delivery, this would not affect the validity of the previous oral agreement, nor would it preclude the use of the document as a memorandum under the statute of frauds.

Finally, it must be noted that the settlement is not void for want of mutuality. Even if that contractual concept were dispositive of the issue before this court, it is apparent that here, as in every settlement, there is in fact an exchange of mutual benefit. For his part, appellant has agreed to meet the terms set forth in the agreement. At the same time appellee has agreed to give up requests for even greeter benefits which, though ultimately might not be granted to her, are nevertheless her legal right to pursue.

## II.

With respect to the enforceability of the separation agreement, the appellant has also made the following assignment of error:

"3. A wife may elect to rescind a separation agreement when the husband breaches or repudiates it—if she does so and seeks other relief, the agreement is at an end."

The initial page of the separation agreement indicated that one of the reasons for its execution was "the mutual desire of the parties that a *full and final settlement* of all their *property rights, interests* and *claims* be had, settled and determined by them in this Agreement * * *." (Emphasis added.) Pursuant to that intent, Item One, "Mutual Release", at page two of the agreement provides that:

"* * * each party hereby waives, relinquishes and surrenders all claims or rights against the other for support

and maintenance or otherwise except as hereinafter provided * * *."

From a reading of these provisions it becomes apparent, especially in light of this court's decision in *Rahm* v. *Rahm* (1974), 39 Ohio App. 2d 74, that by the settlement agreement appellee released appellant from all obligations of support and maintenance except those specifically provided for in the separation agreement. This included not only those amounts to which she had a claim, but also amounts—such as those in arrearage or reduced to judgment—to which she had a right. Thus, the trial court erred when, in addition to entering judgment for the appellee and adopting the separation agreement, it granted judgment for appellee in the sum of $5,300, representing alimony arrearages accrued prior to the separation agreement.[1] Accordingly, we reverse that portion of the judgment.

---

[1] In its May 30, 1974 judgment the court made the following orders:

(1) the appellee was granted an absolute divorce from the appellant;

(2) the appellee was granted custody of the parties' minor child;

(3) the appellant's January 25, 1974 Motion for Relief from Judgment was denied;

(4) the Court's entry of July 25, 1973, was ordered to remain in effect;

(5) the final settlement of November 17, 1972, as reflected by a writing titled "Separation Agreement," was approved and adopted in its entirety;

(6) the appellee was granted judgment against the appellant in the sum of $5,300.00, representing arrearages for temporary alimony and child support under previous court orders;

(7) the appellee was granted judgment in the sum of $3,079.85 representing arrearages for child support payments under the separation agreement;

(8) the appellee was granted judgment against the appellant in the sum of $2,000.00, representing a lump sum payment required under the separation agreement;

(9) the appellant was required to deliver to the appellee a quit-claim deed conveying to the defendant his interest in the parties' North Olmsted, Ohio home;

(10) the appellant was required to execute and deliver to the appellee forms of assignment conveying to the appellee the appellant's interest in two life insurance policies;

But appellant argues that since judgment under existing court orders and judgment under the separation agreement were "inconsistent" remedies, the appellee's attempt to enforce the former constituted an election not to enforce the latter. The particular facts of this case indicate that both the appellee and the court were under the misconception that the pre-separation agreement orders were unaffected by the separation agreement and that appellee therefore could consistently attempt to enforce both those court orders and the separation agreement. In spite of our decision herein that this was not the case, we nevertheless find that there is no evidence in the record to indicate that the appellee either elected not to enforce the separation agreement or that she acquiesced in appellant's repudiation of the same.

### III.

Appellant's fourth and first assignments of error are as follows:

"4. A court in awarding alimony must look at the entire picture of the marriage and give particular attention to the property of the parties and the earning capacity of either."

"1. An award of attorney fees in a marital action approximating 37% of the total assets involved is excessive and arbitrary."

Under R. C. 3105.18 and Civil Rule 75(N) the trial court is specifically authorized to award alimony to either party in a divorce proceeding. Such alimony may include an allowance for reasonable attorney fees. *E.g., Gage* v.

(11) the appellee was granted judgment against the appellant in the sum of $3,600.00 representing alimony in the form of attorney fees for services rendered prior to the November 17, 1972 settlement;

(12) the appellee was granted judgment against the appellant in the sum of $8,780.40, representing alimony in the form of attorney fees for services rendered subsequent to the November 17, 1972 settlement;

(13) all motions and applications not otherwise ruled upon by specific orders of the court were denied; and

(14) the costs of the proceedings were assessed to the appellant and reduced to judgment.

*Gage* (1956), 165 Ohio St. 462; *Stuart* v. *Stuart* (1944), 144 Ohio St. 289.

Both the question of whether alimony should be awarded and, if it is to be awarded, the amount of alimony to be granted are both committed to the sound discretion of the trial court. *E.g.*, *Lykins* v. *Lykins* (1964), 93 Ohio Law Abs. 385, 386; *Bryant* v. *Bryant* (1949), 56 Ohio Law Abs. 107, 109, quoting *Rovder* v. *Rovder* (1946), 50 Ohio Law Abs. 171, 174.

In making an award of attorney fees as alimony, consideration must be given to the reasonableness of the attorney fees and to the special criteria used in the granting of an alimony award. *See generally* annotation 57 A. L. R. 3d 475.

Upon appeal the only questions for inquiry are whether the factual conclusions upon which the trial court based the exercise of its discretion were against the manifest weight of the evidence; or, whether there was an abuse of discretion. *E.g.*, *Dennison* v. *Dennison* (1956), 165 Ohio St. 146.

### A.

Initially, reference should be made to DR2-106(B), Code of Professional Responsibility (1970), 23 Ohio St. 2d, which offers the following guidelines for determining the reasonableness of a fee:

" (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

" (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

" (3) The fee customarily charged in the locality for similar legal services.

" (4) The amount involved and the results obtained.

" (5) The time limitations imposed by the client or by the circumstances.

" (6) The nature and length of the professional relationship with the client.

" (7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

"(8) Whether the fee is fixed or contingent."

In the instant case attorney fees were awarded in two distinct parts: an award of $3,600 for fees prior to the separation agreement; and an award of $8,780.40, for subsequent services. With respect to the first amount, the separation agreement simply provides that "the husband shall also be solely responsible for and shall pay to the wife her costs of legal counseling * * * ." But that agreement does not specify any amount then due. While the trial court's May 30, 1974, judgment indicates that the court found that the figure $3,600 was a compromise figure agreed upon by the parties at the November 17, 1972, hearing, there is no evidence in the record to support such a finding. Nor does the record before us demonstrate facts upon which the reasonableness of the fee could be judged.

Similar difficulties exist with respect to the $8,780.40 award. Counsel for the appellee submitted a twenty-three page statement of account for legal services rendered to the appellee. Though that statement purports to concern "all legal services rendered" in the case, an examination of the document reveals that it is concerned only with those services rendered after the separation agreement—commencing on December 4, 1972. Specific actions of counsel are listed, but the amount of the fee requested by the appellee and granted by the court was obtained by a simple mechanical formula. The appellee indicated that a total of 211.7 hours had been expended by her counsel. That figure was multiplied by $40, which represented the minimum fee under the schedule of the Bar Association.[*] This multiplication produced a subtotal of $8,468, to which $312.-40 for miscellaneous costs was added, making a total of $8,780.40.

As a matter of law we find that this method of determining fees is deficient. Under both the disciplinary rules and the extensive case law, see annotation 57 A. L. R. 3d 475, time expended is only *one* of the factors to be considered.

[*] Though it was the appellee who suggested the use of the $40 figure, it was also stated that appellee and her attorney had contracted to compensate the attorney at a rate of $50 per hour.

The value of services may be greater or less than that which would be reflected by a simple multiplication of an hourly rate by time expended. We think that in divorce cases, as in probate cases, "[t]o employ the timeclock method alone as the test for legal services * * * would certainly be improper and result in completely inadequate fees in large estates and disproportionately high fees in modest ones." *In re Augar* (1963), 39 Misc. 2d 936, 242 N. Y. S. 2d 84, 89, *aff'd,* 245 N. Y. S. 2d 358.

Indeed, it is recognized that domestic relations cases tend to consume a considerable amount of time and that counsel must generally realize that he cannot always expect full compensation for the time so consumed. *E.g., DeWitt* v. *DeWitt* (S. D. 1971), 191 N. W. 2d 177; *Shuman* v. *Shuman* (Pa. 1961), 170 A. 2d 602.

Under these circumstances we must reverse the award of attorney fees and remand that issue for the reconsideration of the trial court in light of all the criteria set forth above. In doing so we believe there are four matters which merit the court's special attention.

Initially, it should be noted that at least some of the services for which compensation is sought involved attempts to enforce temporary orders which were merged into the separation agreement and, eventually, into the court's final judgment. It is clear that any attempt to enforce temporary orders after the final judgment would not be activity for which counsel would be entitled to compensation. Depending upon the particlular facts of the case, the same rule might or might not apply with respect to actions taken to enforce temporary orders subsequent to the oral separation agreement. Accordingly, we believe some determination must be made as to the justification or lack thereof for services claimed in the post-November, 1972, attempts to enforce temporary orders.

Second, our inspection of the original papers indicates that subsequent to the separation agreement, appellee's counsel was active in the filing of six separate briefs, totaling 30 pages in length and averaging five pages each. He also filed eleven motions, with seven affidavits. Though this

activity indicates more legal conflict than the average divorce proceeding, we nevertheless find that each document, taken by itself, reveals no requirement for an extraordinary amount of professional skill. To the contrary, the documents filed by appellee's counsel appear to be of a rather routine nature with which we expect all competent counsel involved in domestic relations work to be familiar. While we commend appellee's counsel for the manner in which he represented his client's interest, we also believe that the difficulty of the issues in the case should be given appropriate consideration in determining reasonable attorney fees. *See, In re Marriage of Jayne* (Iowa 1972), 200 N. W. 2d 532; *DeWitt* v. *DeWitt, supra.*

Third, we note that in addition to court appearances, the preparation of legal documents and normal phone calls, much of counsel's activity was devoted to ''conferences'' and ''telephone conferences.'' Our own perusal of the record indicates that there were at least 263 telephone conferences—132 of these with the appellee, and at least 63 with counsel for appellant. Similarly, we note that 27 of the 37 office conferences held by Mr. Cannell were with his client, the appellee, Mrs. Swanson.

In spite of the facts of this case which may have made such numerous consultations necessary, we are also aware that ''* * * there comes a time when counsel is obliged to limit such conferences or accept the fact that he cannot always expect full remuneration for the time so consumed. This is particularly true in divorce actions. Some litigants will virtually take over counsel's office and absorb most of his time if permitted by counsel to do so.'' *DeWitt* v. *DeWitt, supra.*

Any determination of reasonable attorney fees, therefore, must include not only a consideration of the professional skill utilized in these various conferences, but also whether, in view of the particular facts of this case, the total number of conferences should be compensable.

Finally, in considering, as one of the relevant factors in determining compensation, the fee customarily charged in the locality, we believe that use of the minimum fee

schedule must be reassessed in view of a recent decision of the United States Supreme Court (*Goldfarb* v. *Virginia* (1975), 95 S. Ct. 2004).[3]

As previously stated, the reasonableness of the fees must also be considered in light of the fact that this is a divorce proceeding and in view of the special criteria developed for use in the award of alimony because the fee is awarded as part of alimony.

These criteria encompass a consideration of the entire picture of the marriage to be dissolved. *Esteb* v. *Esteb* (1962), 173 Ohio St. 259; *see generally*, annotation, 1 A. L. R. 3d 6. Though not exclusive, former R. C. 3105.18 outlined the following as proper matters for the consideration of the trial court:

"(1) property which came to either party by their marriage;

"(2) earning capacity of the parties; and

"(3) the value of the real and personal estates of each party."

Its successor statute, effective September 23, 1974, essentially codified the case law of Ohio and other jurisdictions, and accordingly requires the trial court, in matters involving alimony, to consider all relevant factors, including the following:

"(1) The relative earning abilities of the parties;

"(2) The ages and the physical and emotional conditions of the parties;

"(3) The retirement benefits of the parties;

"(4) The expectancies and inheritances of the parties;

"(5) The duration of the marriage;

"(6) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;

---

[3] In *Goldfarb* the Supreme Court held that a minimum fee schedule published by the Fairfax County Bar Association, and enforced by the Virginia State Bar Association, constituted price fixing. Further, the court held that, at least insofar as that minimum fee schedule and its enforcement applied to legal services relating to real estate transactions, this action was violative of Section 1 of the Sherman Act, 15 U. S. C. Sec. 1.

"(7) The standard of living of the parties established during the marriage;

"(8) The relative extent of education of the parties;

"(9) The relative assets and liabilities of the parties;

"(10) The property brought to the marriage by either party;

"(11) The contribution of a spouse as homemaker."

But the initial overriding consideration is the financial ability of the individual in question to meet the demands of any award. *See Rivers* v. *Rivers* (1965), 14 Ohio App. 2d 120. Not only must the award be within the individual's ability to pay, but it must also leave that individual the means to maintain his own health and well being by obtaining proper food, shelter and clothing, and it must not burden him to the extent his incentive to pay is destroyed. *Blaney* v. *Blaney* (Iowa 1964), 130 N. W. 2d 732, 733. *See Coleman* v. *Coleman* (Mo. App. 1958), 318 S. W. 2d 378.

In this case the appellant strenuously argues that the award of attorney fees in the sum of $12,380.40 is far in excess of his ability to pay. In support of this he points to the portions of the record which indicate that during the years 1968 through 1973 he never received cash earnings of more than $15,196. Further, appellant argues that after the liabilities of the parties are subtracted from the assets, the net value of their estates amounts to $33,500.

If this were the only evidence in the record below we would have no difficulty in concluding that the attorney fees awarded were demonstrably disproportionate to the evidence of appellant's ability to pay, particularly considering the other monetary awards included in the judgment entry of the court.

But, as is to be expected in such cases, there is a conflict in the evidence as to the financial status of the husband. For her part, the appellee testified that while her husband did not generally share information with her concerning his financial transaction, he did state to her on several occasions that he was worth $250,000. On cross-examination she indicated that not only did he state his worth was a quarter of a million dollars, but that he expected to

be worth a million. She further testified that while she and her husband lived together they lived "extravagantly" and "wanted for nothing." She indicated that they maintained their standard of living by using both her husband's income and his company expense accounts.

There were a number of circumstances in the record which would corroborate Mrs. Swanson's belief that her husband's capacity to earn income was much greater than that to which he testified. The record contains much testimony concerning the loss of Mr. Swanson's interest in Micro Graphics Corporation and the partnership known as K & S, immediately prior to and during these proceedings, even though he failed to properly reflect these transactions in his income tax statements. It also contains extensive testimony concerning Mr. Swanson's continuing relationship with Micro Graphics, including maintenance and repair of a company car which was used by, and eventually given to Mrs. Swanson; cash advances from the company to Mr. Swanson; expense accounts; Mr. Swanson's relationship with Micro Graphics, with its accountant and his continuing control of the corporation books; and a $6,000 check drawn upon Micro Graphics for Mr. Swanson's use in settling of the amounts due in these proceedings.

Further corroboration could be provided by reference to appellant's "Attachment to Answer-Affidavit", filed May 15, 1972. Appellant indicated in that document from March, 1971, through March, 1972, he had paid $9,000 toward the support of his wife and daughter. These payments were made at a time when, as brought out at trial, the appellant claimed his total income was only $15,055. Similarly, though appellant's tax returns for 1972 indicate that his total earnings were only $13,796, he claimed to be making monthly payments which, on a yearly basis, would total $23,220.

We are fully aware that the appellant at trial presented credible explanations of his business transactions which, if believed by the court, would have justified a conclusion that his financial condition as alleged in his testimony was accurate. However, the court was acting as the trier of fact

and was free to believe or disbelieve his testimony, in whole or in part.

Based upon this record, if the time utilized by the attorney were the only factor to be considered in determining the reasonableness of attorney fees to be assessed in a divorce proceeding, we would be unable to say that the amount of the award of attorney fees as alimony was excessive, when viewed in the light of the evidence adduced concerning appellant's financial resources. However, as previously indicated, we do find that the award of attorney fees as alimony was an abuse of discretion based on the manner in which the trial court determined the reasonable value of the services of appellee's attorney and consequently, upon this issue we find merit in assignments of error numbers four and one.

## IV.

The appellant also assigns as error:

"5. Testimony of a lawyer who is both an advocate and a witness in a proceeding should be treated in light of Canon 5, Code of Professional Responsibility."[4]

Counsel for appellee is incorrect when he asserts that the Code of Professional Conduct is "not mandatory" and "purely suggestive." The Supreme Court Rules for the Government of the Bar of Ohio (February 28, 1972), Rule IV(1) provides that the Code "shall be binding upon all persons admitted to practice law * * * ." Moreover, only

---

[4] Canon 5 states that:

"A Lawyer Should Exercise Independent Professional Judgment on Behalf of a Client."

In EC 5-9 it is stated that:

"Occasionally a lawyer is called upon to decide in a particular case whether he will be a witness or an advocate. If a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively."

See also EC 5-10 and DR 5-102.

recently this court has utilized the analogous Code of Judicial Conduct to establish the clear duties of a trial judge and the effect of violation of the same upon the substantive rights of the parties. *Cuyahoga Co. Bd. of Mental Retardation* v. *Association* (1975), 47 Ohio App. 2d 28.

Nevertheless, we hold that because of the lack of objection below; the lack of any showing of prejudice to the appellant; the special nature of a divorce proceeding; and the obvious intent of the Canon and Disciplinary Rule to protect the interests of the attorney's client, not the opposing party, this error is without merit and is hereby overruled.

## V.

In summation, we reverse the award of $5,300 representing arrearages of alimony accrued prior to the execution of the separation agreement and contained in the first full paragraph on page eight of the trial court's May 30, 1974, judgment; and reverse and remand for further consideration the determination of the reasonableness of the attorney fees awarded as alimony, consistent with guidelines suggested by this opinion. With the exception of the aforedesignated orders, the judgment of the trial court dated May 30, 1974, is affirmed.

*Judgment affirmed in part, and reversed in part.*

DAY and SILBERT, JJ., concur.

SILBERT, J., retired, assigned to active duty under authority of Section 6(C), Article IV, Constitution.