SAEKS, APPELLEE, *v.* SAEKS, APPELLANT.

(No. 8909—Decided April 22, 1985.)

*Jeffrey E. Froelich,* for appellee.
*Keith A. Saeks,* for appellant.

WEBER, J. On September 21, 1981, the trial court filed an entry of judgment and final decree of dissolution of marriage which fully encompassed as part of the order a separation agreement which had previously been executed by the parties, Harlan R. Saeks (appellant) and Gloria G. Saeks (appellee). Among other matters, the separation agreement provided for the payment of permanent alimony by appellant to appellee as follows:

"Permanent Alimony: Husband agrees to pay and the Wife agrees to accept, in full and complete discharge and settlement of Husband's obligation for the payment of permanent alimony, thirty percent (30%) of the first seventy thousand dollars ($70,000.00) of *gross earned income* and twenty percent (20%) of the balance thereafter, before business deductions. [Emphasis added.]

"a. That the Wife shall receive, as and for permanent alimony, a minimum from the Husband of twenty thousand dollars ($20,000.00) per year;

"b. That the provisions for the payment of permanent alimony from the Husband to the Wife shall only remain in force and effect until such time as the Wife either dies and/or remarries, and at which time, Husband's responsibility for the payment of alimony shall cease;

"c. Gross earned income shall be defined as being the same as the Husband's gross receipts from his business only being that income received by the Husband from his employment as an Insurance Salesman, or any other employment, before deductions for Taxes and/or any business expenses, but shall not include income earned from inherited assets;"

Appellant had for many years operated his insurance business as a single proprietorship. For the year 1982, appellant earned $120,381.31 from his insurance business. That year, pursuant to the separation agreement and dissolution decree, he paid appellee $31,076.21.

In January 1983, appellant incorporated his business. He is the sole shareholder, director and officer. That year, the corporation received commissions amounting to $85,451.48 from which it paid appellant a salary of $5,850. In addition, appellant received commissions amounting to $70,773.31. Calculating his "gross earned income" under the decree as the sum of only the latter two figures, he paid appellee a total sum of $21,329.26 for 1983.

Believing that the commissions received and retained by appellant's corporation should have been included for the purpose of calculating her alimony, appellee, on February 8, 1984, filed a motion to show cause requesting the trial court to find appellant in contempt for failure to pay alimony due, and further seeking an award of reasonable attorney fees. Subsequently, a hearing was held before a court-appointed referee who, on March 5, 1984, filed his report and recommendation. After both parties filed extensive objections and supporting memoranda to the report and recommendation of the referee, the trial court, on March 26, 1984, filed an order for re-hearing by the court.

This case came to be heard by the court on April 19, 1984. At the very beginning of the hearing, appellee moved to amend or modify her contempt motion to be one "for determination that there is an arrearage and a judgment on that arrearage, plus interest." Appellant did not object, and the trial court granted this motion. At the close of this hearing, the trial court announced its decision and granted appellee judgment in the sum of $15,915.54. This amount is the dif-ference between the alimony paid and that which would be owed by including in appellant's income the amounts received by his corporation. The court scheduled a later date for hearing on the motion for attorney fees. Following that hearing, the court ordered appellant to pay appellee $2,024 as reasonable attorney fees. From these judgments, appellant has timely perfected his appeal.

Appellant sets forth six assignments of error. These state as follows:

"* * *[1]

"III. That a variation, by way of diminution, in the payment of sustenance alimony, occasioned and occurring by virtue of and pursuant to the reduction in gross earned income of the husband-payor, due to the valid incorporation of his business, and the resulting decrease in sustenance alimony paid to the wife-payee, being in conformity with the percentage provision for the payment of sustenance alimony as provided for in the separation agreement attached to, incorporated in and made a part of the final decree of dissolution of their marriage, represents compliance with the decree as opposed to and rather than a modification thereof, so that a trial court's 'enforcement' of the alleged failure on the part of the husband-payor to comply with such provision is an absolute abuse of discretion of the lower court.

"* * *

"VI. A trial court abuses its discretion where it allows an allowance and request for attorney fees to be paid by the husband-respondent to the wife-movant's counsel, where there is no finding of contempt and/or an intentional violation of the court's order by the respondent; no finding of inability on the part of the wife to pay; no finding that

[1] Reporter's Note: The text of the opinion as it appears herein was abridged by Judge Weber.

respondent violated the provisions of the court's order and/or agreement of the parties and where counsel apparently charged a fee based upon what the 'traffic would and/or could bear' and where certain items included therein, allowable by the court, were unreasonable, unnecessary and the totality thereof represents a penalty to the ex-husband, respondent, notwithstanding the fact that he did not violate the previous order of this court and that said finding of the court is an abuse of its discretion inasmuch as it is a misapplication and interpretation by the court of the provisions of the *Swanson* case and the factors of DR 2-106 of the Code of Professional Responsibility.''

The first five assignments will be considered together. In essence, they present the single question whether the trial court erred by including the commissions received by the corporation in determining appellant's ''gross earned income'' for purposes of calculating the alimony due to appellee, concluding that appellant was in arrears, and awarding a lump sum judgment to the appellee. For the following reasons, we hold that the trial court did not err.

Initially, we find that the trial court properly had jurisdiction over this matter. Under R.C. 3105.65(B), "* * * [t]he court has full power to enforce its decree * * *.'' In the present instance, the separation agreement and its terms were merged into and became part of the court's decree. We find that the facts of this case present a good faith confusion over the requirements of the court's decree; thus, it was properly within the court's power to enforce its decree, to hear this matter, clarify the confusion, and resolve the dispute.

Turning now to the merits of the dispute, appellant correctly points out that his corporation was properly formed under the laws of Ohio and is a separate legal entity. Thus, he argues, its income cannot be included as part of

his. Appellant testified that although he knew incorporation of his business would necessarily result in reduced alimony to appellee, this was not his primary reason for incorporation. Rather, he testified that he incorporated his business for tax purposes. He argues that since no fraud was intended, the ''corporate veil'' should not be ''pierced,'' and only income received directly by him should be included in the alimony computation.

The concept of a corporation being a separate entity from its shareholders is a legal fiction which will under certain circumstances be disregarded. See *Geittmann* v. *Geittmann* (1984), 126 Ill. App. 3d 470, 467 N.E. 2d 297, 301; *Kohn* v. *Kohn* (1950), 95 Cal. App. 2d 708, 718, 214 P. 2d 71, 76-77; *Bucyrus-Erie Co.* v. *General Products Corp.* (C.A. 6, 1981), 643 F. 2d 413, 418. This would include the situation where, as here, the corporation has no separate identity from its shareholder, has no ''mind of its own'' (that is, the shareholder exerts complete control), and where the result of recognition of the corporation would be inequitable or unjust or result in an injury or unjust loss, or derogation of the rights of another party. The trial court believed this to be the case since appellant ''was aware that his actions of incorporating would reduce the alimony to Mrs. Saeks *which was not the intention of the parties' separation agreement.*'' (Emphasis added.) The court thus found that the parties intended for appellee to share in appellant's business' ups and downs, and not simply in appellant's formal ''personal gross income'' which he could significantly manipulate. Indeed, he testified at trial that the only reason he personally received any commissions at all as opposed to them all being paid to the corporation was the refusal by some insurance companies to license the corporation as their agent. Thus, had appellant fully had his way, his personal

gross income would have only been the salary of $5,850 paid him by his corporation, and appellee's alimony would have been even less.

We thus conclude that this corporation is appellant's alter ego, and recognizing it as a separate entity would be inequitable and in derogation of appellee's rights. We hold that the trial court did not err. Accordingly, appellant's first five assignments of error are not well-taken.

Turning now to the sixth assignment of error, we also hold that the trial court did not commit error by awarding appellee attorney fees in the amount of $2,024. "Upon appeal the only questions for inquiry [on the award of attorney fees] are whether the factual conclusions upon which the trial court based the exercise of its discretion were against the manifest weight of the evidence; or, whether there was an abuse of discretion. * * *" *Swanson* v. *Swanson* (1976), 48 Ohio App. 2d 85, 90 [2 O.O.3d 65]. In its order of June 8, 1984, the trial court stated as follows:

"The only remaining question for the court, and it is a question of law, is whether the court may order * * * [appellant] to pay all or part of those fees to * * * [appellee] when she has elected to take a lump sum judgment rather than to have * * * [appellant] held in contempt. This question is before the court as a result of * * * [appellant's] failure to abide by the court's orders of September 21, 1981 [the Dissolution Decree], which failure has caused * * * [appellee] to seek the assistance of the court in the enforcement of its orders.

"There are a variety of methods available to enforce the orders of the court, the most common being a contempt proceeding. Delinquent payments may also be reduced to a lump sum judgment in order that an execution may be levied thereunder. Whichever remedy is sought the object is the same: the enforcement of the court's orders.

"As correctly stated by * * * [appellee's] memorandum filed on March 16, 1984, had the court's orders been enforced through a contempt proceeding, * * * [appellant] could have been held liable for attorney fees incurred by * * * [appellee]. There is no Ohio case law precisely on point in regard to awarding attorney fees when the court orders are sought to be enforced through a lump sum judgment as opposed to a contempt proceeding. However, the rationale for ordering * * * [appellant] to pay for attorney fees incurred by * * * [appellee] is the same no matter which remedy is sought. * * * [Appellant's] failure to abide by the court's orders has caused the attorney fees to be incurred. There is nothing of a punitive nature involved in ordering attorney fees to be paid by * * * [appellant] when it is the * * * [appellant's] actions which have caused such fees to be incurred. Rather it is * * * [appellee] who would in fact be penalized should she be obligated for attorney fees incurred as result of [appellant's] disobedience of the court's orders."

We find this reasoning to be sound. Additionally, the Ohio Supreme Court has held that "[a] trial court has authority, after the entry of a divorce decree, to enter an order requiring the divorced husband to pay reasonable expense money to his former wife to enable her to pay attorney fees incurred in post-decree proceedings relative to the support of the minor children of the marriage. * * *" *Blum* v. *Blum* (1967), 9 Ohio St. 2d 92 [38 O.O.2d 224], syllabus. In *Blum,* the court stated that the attorney fees incurred by the wife to enforce the husband's child support payments were "necessaries" for the children, and that the father's on-going duty to support his children required his payment of the ex-wife's expenses. "* * * Otherwise, as a practical matter, a divorced father would be insulated from his obligation of support whenever

the divorced mother did not have the resources to pay an attorney." *Id.* at 93. We believe the same reasoning applies to the duty of a husband to pay support alimony to an ex-wife. Therefore, we hold that the trial court did not commit error by ordering appellant to pay appellee's attorney fees. As to the amount of these fees, it appears from the record that the trial court considered all of the factors mentioned in *Swanson, supra,* including the enumerated guidelines of DR 2-106(B), in determining that the fees requested were reasonable. Further, the testimony of the expert witness, if believed, supports the court's ruling. We therefore find that the trial court did not err or abuse its discretion by awarding appellee these reasonable attorney fees. Accordingly, appellant's sixth assignment of error is overruled.

For the above reasons, the trial court's judgment is affirmed.

*Judgment affirmed.*

BROGAN, P.J., and KERNS, J., concur.