This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant Richard Holt has appealed from his conviction and sentence for felonious assault with a gun specification, improper discharge of a firearm into a habitation, tampering with evidence and criminal damaging. This Court affirms.
 I.
On March 6, 1996 the Lorain County Grand Jury indicted Defendant for felonious assault, a violation of R.C. 2903.11(A)(2) and a gun specification for having a firearm on or about his person while committing the offense of felonious assault. The Grand Jury also indicted the Defendant for improper discharge of a firearm into a habitation, a violation of R.C. 2923.161(A); tampering with evidence, a violation of R.C. 2921.12(A)(1); and, criminal damaging, a violation of R.C. 2909.06(A)(1). At trial, several witnesses placed Defendant at the scene of the crime and identified him as the offender. Moreover, scientific evidence was presented that linked a weapon owned by Defendant to the one used on the day in question. In response, Defendant presented testimony that he was at a hotel during the assault. He also introduced scientific test results which he claimed exonerated him. On November 10, 1996, Defendant was found guilty by a jury on all counts. The trial court sentenced him and Defendant timely appealed to this Court asserting two assignments of error.
 II. A. The trial court's judgment was against the manifest weight of the evidence.
In his first assignment of error, Defendant has asserted that, in light of the conflicting evidence admitted at trial, the trial court's judgment was against the manifest weight of the evidence. His argument is without merit.
To determine whether a conviction is against the manifest weight of the evidence:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting Statev. Martin (1983), 20 Ohio App.3d 172, 175; see, also, State v.Otten (1986), 33 Ohio App.3d 339, 340. Specifically, weight of the evidence concerns the inclination of a greater amount of credible evidence to support one side of the issue rather than the other. Thompkins, at 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594.
Moreover, where a mere conflict in evidence exists and reasonable minds could reach differing conclusions upon issues of fact, a lower court's decision will go undisturbed. Swanson v.Swanson (1976), 48 Ohio App.2d 85, 86-87. In such a case, this Court will not sit as a thirteenth juror and overrule the jury's resolution of conflicting testimony. See Thompkins,78 Ohio St.3d at 387, quoting Tibbs v. Florida (1982), 457 U.S. 31, 42,72 L.Ed. 2d 652, 661.
At trial, the State offered the testimony of several witnesses whose accounts corroborated one another and placed Defendant at the scene of the crime. Lester White, the victim, testified that on November 29, 1995, after visiting the grocery store, he observed a dark Cutlass trailing his vehicle. When he reached the home of his girlfriend, Marjorie Burrey, the mysterious Cutlass immediately turned into the driveway of the duplex next door. Defendant exited that car, leant over its hood and pointed a gun at the victim. Mr. White retreated into Ms. Burrey's home and the police were called.
Mr. White further testified that, after learning from the dispatcher that a patrolman was in the area, he returned outside to find two males, Defendant and Jamal Treadwell, in a neighbor's yard. Defendant then turned and fired three shots at the victim. One shot struck the victim's car and another Ms. Burrey's home. Ms. Burrey related the same events.
Jamal Treadwell took the stand and verified Mr. White's statements. According to Mr. Treadwell, he observed Defendant pull into the duplex next door to Ms. Burrey's residence and then went to greet him. Mr. Treadwell then testified that, after Defendant fired his Tech-9 semi-automatic weapon, he "tossed" it to Mr. Treadwell and fled. This series of events was corroborated by Helen Shuman, a neighbor who witnessed the event.
The State also presented evidence that, on the day in question, Defendant visited BT Shooting Supplies where he obtained a Tech-9 semi-automatic weapon. In order to buy the weapon, Defendant was required to display identification. The clerk recorded Defendant's driver's license number on the purchase document.
Finally, the State offered the testimony and report of an expert from the Bureau of Criminal Identification and Investigation ("BCI") that linked the weapon and Defendant to the crime. Two shell casings were recovered from the scene, and a bullet was retrieved from Ms. Burrey's home. These items were submitted to BCI for testing. The expert testified that both the bullet and casings were fired from Defendant's Tech-9.
In his defense, Defendant presented the results from a nitrate test performed on him. A nitrate test determines whether any traces of gun powder can be found on an individual's hands. Several hours after the incident, such a test was performed on Defendant. The results were negative. However, in response, the State presented evidence that due to the gap of time between the test and the shooting, Defendant would have had the opportunity to rid his hands of any incriminating residue.
Defendant also presented an alibi defense. He testified that he was at the Journey Inn during the time of the shooting. Subsequently, he presented the testimony of Nina Brown to corroborate. Ms. Brown, the mother of two of Defendant's children and his mistress at the time of the offense, testified she was with Defendant at the exact time of the assault. Nevertheless, as noted previously, several other witnesses placed Defendant at the scene and identified him as the perpetrator.
Defendant's contention that such conflicting evidence provides a basis for reversal is untenable. After reviewing the entire record, weighing the evidence and considering the several witnesses' credibility, this Court concludes that the jury did not clearly lose its way, that the conviction was not a miscarriage of justice and that it was not against the manifest weight of the evidence.
Defendant has also argued there was insufficient evidence presented against him. Although not identified in his assignments of error, this Court will address that issue here. While a manifest weight challenge questions whether the State has met its burden of persuasion, the test for sufficiency merely requires a determination of whether the State has met its burden of production at trial. Id. at 390 (Cook, J., concurring). In other words, sufficiency is a prerequisite to presenting a case to the jury. As such, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. State v. Angle (June 2, 1999), Medina App. No. 2875-M, unreported, at 8. Defendant's sufficiency argument must therefore fail. Defendant's first assignment of error is overruled.
 B. The trial court erred to the prejudice of appellant when it allowed Nina Brown to relate hearsay statements to the jury.
In his second assignment of error, the Defendant contends that the trial court erred by allowing hearsay evidence from Nina Brown who testified how she learned that the Defendant had been accused of these crimes. Such testimony is not hearsay.
Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. Evid. R. 801 (C). To constitute hearsay, two elements are required. First, there must be an out of court statement. Second, that statement must be offered to prove the truth of the matter asserted. State v. Maurer (1984), 15 Ohio St.3d 239,262. If either element is missing, the testimony is not hearsay. Id.
Defendant challenges the following testimony:
 Q. So what makes November 29th of 1995 stand out in your mind that you're sure you were with this man in a hotel?
 A. Because I remember the day. I remember what happened that day. I remember my mom telling me. Richard didn't tell me what happened, my mom did.
Q. When did your mom tell you?
MR. GRUNDA: Objection.
A. The — THE COURT: Overruled.
A. — next day.
 Q. And how did your mom tell you she found out Richard was in trouble?
A. How did my mom tell me?
Q. Uh-huh. How did she find out; do you know?
 A. Yes, I do know. When I went to pick my kids up in the morning, my mom — well Lester was, was going with my sister Miesha and he spent the night over my sister, my mom's apartment [sic]. When I went to pick my kids up, he was there and my mom told me what happened.
 Q. So you're saying that Lester spent the night with your sister on the night of the shooting?
A. Yes, he did.
Q. And then he told —
A. My mom.
Q. — your mom about it?
 A. Yes he did. My mom, that's who told me. My mother told me.
This testimony does not relate a statement made by someone other than the declarant. In fact, Ms. Brown never testified to any actual statements made by her mother. Ms. Brown merely explains why she remembers the events that took place on November 29, 1995 and clarifies how she came to know that the Defendant was "in trouble." As such, the first element of hearsay has not been satisfied. Ms. Brown's testimony did not constitute hearsay and Defendant's second assignment of error is overruled.
 III.
Defendant's two assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
 KK
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ BETH WHITMORE
 FOR THE COURT
BAIRD, P.J.
SLABY, J.
CONCUR