OPINION
Appellant Husband, Gary J. Donese ("Gary"), appeals judgment of the trial court finding neither party in contempt and awarding Appellee Wife, Betty G. Grant ("Betty"), attorney fees. This matter came to be heard upon motions to show cause for contempt filed by each of the parties. Gary's motion claimed Betty should be held in contempt for failing to provide his business records, failing to pay expenses of the marital residence, and removing several fixtures from the marital residence. Betty's motion alleged that Gary should be held in contempt for failure to pay court-ordered monthly payments for her property settlement and failure to pay attorney fees ordered on May 18, 1999. Additionally, Betty's motion requested attorney fees and costs incurred in the contempt motion.
After reviewing the record, we find that the following was ordered by the trial court on June 11, 1997, as it pertains to this appeal. All business records remaining in the home belonged to Gary, and he was to be permitted access to the residence to retrieve them. In addition, Betty was entitled to one half of Gary's interest in the business known as Beavercreek Lock Store. In regard to the marital residence, Betty was to remain living there until it sold, during which time she was responsible for all expenses. Further, all personal property not specifically mentioned in the judgment entry was to be distributed by a coin toss. Finally, Gary was ordered to pay Betty $587 per month in spousal support.
In an October 7, 1998 judgment entry, the trial court issued further orders regarding property division and spousal support. Initially, the trial court addressed the issues of medical insurance and Betty's interest in Beavercreek Lock Store, both of which had been remanded in a previous appeal. The court found based on stipulations that Gary owed Betty $5338 in medical expenses incurred due to his cancellation of insurance, $91,340 for her interest in the Lock Store, and $42,300 for her portion of the equity in the marital residence. In an amended judgment entry, the court correctly calculated this amount to be $138,978. Further, the court terminated spousal support, but found Gary still owed $7044 in arrearages. Gary was ordered to pay $1000 per month, $250 in spousal support arrearages and $750 for the property settlement beginning November 1, 1998. After twenty-four months, the balance was due in a lump sum payment.
A hearing was held on December 20, 1999 wherein both parties testified. The parties did not dispute that Gary had fairly consistently paid the $250 per month in spousal support arrearages, but had only made one $750 payment for the property settlement. Gary did not deny failing to pay the $688 in attorney fees awarded in a prior judgment entry. He claimed that he was never aware of the order, or he had forgotten due to his medical problems. Further, Betty claimed that she could not pay the expenses at the marital residence due to Gary's failure to pay the money owed to her.
Additionally, Betty admitted that she had removed window coverings, a chandelier, light fixtures and brass bathroom fixtures from the marital residence. However, she did not feel this changed the value of the home or the price it brought in the sheriff's sale. No evidence was presented indicating that the value was affected. Gary argued that Betty still had business documents belonging to him. Betty denied this, stating that Gary brought movers to the residence under police escort after the June 11, 1997 order and removed all business records and other separate property. Finally, neither party had arranged or completed the division of remaining property ordered to be distributed by a coin toss.
In its January 28, 2000 judgment entry, the trial court held neither party in contempt of court. First, it reasoned that Gary had ample opportunity to collect his property and business records when he came to the home with movers under police escort. Second, the court found that Gary had twenty-four months from October 11, 1998 [sic] to pay Betty in full the amount owed, as per the previous order. Finally, Gary was ordered to pay Betty the $688 in attorney fees previously ordered, as well as $2000 in attorney fees for bringing and defending these contempt motions. Gary appeals this judgment raising the following assignments of error:
 The trial court erred in awarding attorney fees to Plaintiff.
 The trial court erred in awarding attorney fees in the amount of $2000 to Plaintiff.
 The trial court erred in overruling Defendant's motion that Plaintiff show cause for failing to divide marital property as per the decree.
 I
In his first assignment of error, Gary alleges that the trial court erred in awarding Betty's attorney fees. Initially, we agree that Ohio follows the American rule, which does not permit the award of attorney fees absent statutory authorization. Sorinv. Board of Ed. Of Warrensville Heights School Dist. (1976),46 Ohio St.2d 177, 179. However, there are some exceptions to this rule.
One such exception to the American rule allows an attorney fee award when a defendant is found guilty of civil contempt.Planned Parenthood Ass'n of Cincinnati, Inc. v. Project Jericho
(1990), 52 Ohio St.3d 56, 67. Gary argues that since the trial court found neither party guilty of contempt, Betty should not have been awarded attorney fees. This is not necessarily true. A court has the discretion to award attorney fees in a post-divorce decree proceeding without a finding of contempt. Cattren v.Cattren (1992), 83 Ohio App.3d 111, 114, citing Saeks v. Saeks
(1985), 24 Ohio App.3d 67, 71-72. In Saeks, this court adopted the trial court's reasoning for awarding attorney fees:
 [H]ad the court's orders been enforced through a contempt proceeding, appellant could have been held liable for attorney fees incurred by appellee. There is no Ohio case law precisely on point in regard to awarding attorney fees when the court orders are sought to be enforced through a lump sum judgment as opposed to a contempt proceeding. However, the rationale for ordering appellant to pay for attorney fees incurred by appellee is the same no matter which remedy is sought. Appellant's failure to abide by the court's orders has caused the attorney fees to be incurred. There is nothing of a punitive nature involved in ordering attorney fees to be paid by appellant when it is the appellant's actions which have caused such fees to be incurred. Rather it is appellee who would in fact be penalized should she be obligated for attorney fees incurred as a result of appellant's disobedience of the court's orders.
 Saeks, supra, at 71 (quotations omitted). We further found that a trial court had discretion to award attorney fees in a post-decree proceeding when a husband has failed to pay spousal support, based on the Ohio Supreme Court holding in Blum v. Blum (1967), 9 Ohio St.2d 92, syllabus. Id.
In the present case, the trial court chose not to find Gary in contempt, but instead chose to enforce its previous orders by simply reiterating those orders. The reasoning we adopted inSaeks applies here. Betty incurred attorney fees in this matter because Gary did not abide by prior court orders. Regardless of whether the court chose to find him in contempt, his disobedience caused her fees to be incurred.
There is also statutory support for the trial court's award of attorney fees. In this regard, R.C. 3105.18(H) provides:
 In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including, but not limited to * * * any proceeding to enforce a prior order or decree, if it determines that the other party has the ability to pay the attorney's fees that the court awards.
 Although the court did not cite this statute as a basis, it clearly allows attorney fees to be awarded in a proceeding to enforce a prior order, as in the present case. Moreover, there is no evidence that Gary does not have the ability to pay the fees ordered by the court.
An award of attorney fees is within the sound discretion of the trial court. Rand v. Rand (1985), 18 Ohio St.3d 356, 359. Based on the above discussion, we find that the trial court did not abuse its discretion in awarding attorney fees. Accordingly, Gary's first assignment of error is overruled.
 II
Even if attorney fees were appropriate, Gary argues that the trial court erred in not determining the reasonableness of the $2000 amount. Generally, a trial court is required to consider certain criteria to determine the reasonableness of attorney fees.Huelskamp v. Huelskamp (June 1, 1994), Miami App. No. 92-CA-45, unreported, at p. 6, citing Swanson v. Swanson (1976),48 Ohio App.2d 85, 90-93. These criteria include "the time and labor involved, the fee customarily charged, the nature and length of the professional relationship with the client, and the parties' relative need and ability to pay."Id. In Huelskamp, this court reversed a $5000 attorney fee award because the trial court did not reference the Swanson
criteria. Several other courts have overturned attorney fee awards because the trial court did not examine theSwanson criteria. See e.g. Whitaker v. Estate of Whitaker
(1995), 105 Ohio App.3d 46, 57; McGinnis v. Donnatelli
(1987), 36 Ohio App.3d 120, 122.
Although in the past we have upheld attorney fee awards when these criteria were not addressed, those cases can be distinguished from the present case. In Woloch v. Foster, we found that if the trier of fact can discern the attorney's time and work, it is not an abuse of discretion to award attorney fees even absent specific evidence to support the amount. (1994),98 Ohio App.3d 806, 813. The attorney fees at issue inWoloch were nominal so there was no need for evidence of the amount actually incurred or the reasonableness of the fees. Id. Additionally, this court upheld a $750 attorney fee award in Stallard v. Stallard, finding that we can take judicial notice of the reasonableness of the fees if they appear to be manifestly reasonable from the appellate record. (July 13, 1994), Greene App. No. 93 CA 58, unreported, at p. 4. The record revealed that the attorney in Stallard had prepared and filed five documents, and appeared in court for two evidentiary hearings. We found $750 in attorney fees for this work to be manifestly reasonable. Id. At a minimum, it appears the record must contain some evidence of the reasonableness of the fees.Whitaker, supra, at 56.
After examining this record, we've determined that representation for the contempt motions included preparation and filing of four documents and appearance at one evidentiary hearing. The only evidence in the record concerning the amount of attorney fees is the following colloquy at the hearing:
THE COURT: Now, as it deals with your fees —
MR. HINES: Right.
 THE COURT: — that's another story. That may take testimony. But under the status of the pending cases as I understand them to be, I can limit that to reasonableness.
MR. HINES: That's right.
 THE COURT: And reasonableness from my understanding is limited to approximately no more than $2,500. Now, have you reached that point yet?
MR. HINES: Yes, Your Honor.
THE COURT: Then you have to have testimony.
MR. HINES: Right. So —
THE COURT: Then I can continue that issue.
 MR. HINES: Right. Continue that particular issue. So, we can, are you asking me if we have gone over $2,500? No, we haven't.
THE COURT: What is the fee?
 MR. HINES: The fee that's been incurred by Ms. Grant to this point is about $2,000.
 THE COURT: Okay. I can take that under advisement without legal testimony.
MR. HINES: All right.
THE COURT: 2,500 is the breaking point.
The record contains no billing statements, and no expert testimony was presented regarding the reasonableness of the fees. A party requesting attorney fees has the burden to prove that the expenses were actually incurred and that they are reasonable and necessary.Thomas v. Thomas (March 31, 1995), Greene App. No. 94-CA-18, unreported, at p. 9. If the party provides no evidence to support his claim for attorney fees, a trial court is precluded from making a factual determination of reasonableness. Id. Because the record lacks any evidence supporting the $2000 award of attorney fees, we sustain Gary's second assignment of error, and remand for a hearing on the reasonableness of attorney fees.
 III
Finally, Gary maintains that Betty should have been held in contempt for failure to abide by the court's order dividing property. Although an individual may be punished for contempt when he or she disobeys a court order, the decision to punish is within the sound discretion of the trial court. See R.C. 2705.02;Denovchek v. Bd. of Trumbull Cty. Commrs. (1988),36 Ohio St.3d 14, 16. Because the purpose of contempt focuses on the court's authority and proper functioning, great emphasis must be placed on the trial court's discretion. Denovcheck, supra. Therefore, an appellate court may only reverse the trial court's findings in a contempt proceeding when there is an abuse of discretion.State ex rel. Ventrone v. Birkel (1981), 65 Ohio St.2d 10,11; Zavakos v. Zavakos Enterprises, Inc. (1989),63 Ohio App.3d 100, 106.
If a trial court has the power and discretion to punish for contempt, it must also have the power to determine what type of conduct will constitute contempt. Bardenhagen v. Bardenhagen
(Aug. 27, 1990), Clermont App. No. CA90-01-009, unreported, at p. 3, citing State ex rel. Turner v. Albin (1928), 118 Ohio St. 527,535. Further, courts should be permitted to decide whether punishment for contempt is necessary under the circumstances.Wolfe v. Wolfe (July 30, 1998), Scioto App. No. 97CA2526, unreported, at p. 3 (citations omitted).
Betty admitted at the hearing that she did remove window coverings, light fixtures and bathroom fixtures from the residence. However, there is no evidence that removal of these items resulted in a loss in value of the home. These were not items that normally would have been divided as part of the coin toss since they were fixtures of the residence. Moreover, these items were removed nearly two years before Gary brought this action for contempt, and well after the house was sold in a sheriff's sale. In addition, we agree with the trial court that Gary had ample opportunity to retrieve any separate property from the residence when he arrived with a moving company and police escort. Based on the foregoing, we do not find the trial court abused its discretion in failing to hold Betty in contempt. Accordingly, Gary's third assignment of error is overruled.
Judgment affirmed in part and reversed in part, and remanded for hearing on the reasonableness of attorney fees.
WOLFF, J., and YOUNG, J., concur.