DECISION AND JOURNAL ENTRY
Appellant, James Wolford, Jr., appeals from the judgment of the Lorain County Court of Common Pleas, Domestic Relations Division. We affirm.
On November 12, 1998, James and appellee, Lisa Trifiletti (f.k.a. Lisa Wolford), were granted a divorce. The parties to this action entered into a separation agreement which was incorporated into the divorce decree and journalized on November 12, 1998. The separation agreement included two handwritten exhibits, one of which ("Exhibit 2") was entitled "Unresolved Items." The first three pages of Exhibit 2 allocated personal property between the parties. The last page of the exhibit was entitled "Items to be Auctioned," and listed ten items, each assigned a number, which had not been allocated to either party. On the same page, in partially illegible handwriting, it stated "she gets the $700 [`claim' or `down'] against David Mann; credit $500."
In the divorce decree, the trial court stated that if James failed to pay the ordered amount of lump sum spousal support within thirty days, the divorce decree would be vacated. A Cseparate order journalized on November 12, 1998, stated, in part, "[t]he parties shall conduct the auction of the items set forth in Exhibit 2 on or before November 25, 1998 or the court will take appropriate action to appoint a receiver regarding those items."
On January 11, 1999, Lisa moved to have James held in contempt. Among the grounds for her motion were (1) James' failure to pay spousal support and other monies as ordered in the divorce decree, and (2) his "failure to participate in the resolution of the nine * * * remaining items of personal property which were to have been auctioned between the parties[.]"
On April 28, 1999, a hearing took place before the magistrate. At the hearing the magistrate conducted a bidding or "sale process" between the parties which resolved the personal property items still in dispute. She also interpreted the additional language from Exhibit 2 to mean that Lisa received credit in the amount of $700 toward the items she purchased from the sale. Additionally, the magistrate noted that Lisa withdrew her motion in contempt without prejudice. James filed timely objections to the magistrate's decision. The trial court overruled the objections, adopted the magistrate's decision, and entered judgment accordingly. James timely appealed the trial court's order, raising two assignments of error for review.[1]
ASSIGNMENT OF ERROR I
 THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN ITS MAGISTRATE CONDUCTED A HEARING ON ISSUES RAISED BY A PARTY'S POST-JUDGMENT MOTIONS AFTER SUCH MOTIONS HAD BEEN DISMISSED, IN PART AND OTHERWISE WITHDRAWN.
James argues in his first assignment of error that the magistrate did not have the authority to issue a decision at the hearing on April 28, 1999, because there were no motions pending at that time. We disagree.
Civ.R. 53 governs the appointment of a magistrate to hear certain cases. Specifically, Civ.R. 53(C)(1)(a)(i) states that any pretrial or post-judgment motion may be referred to a magistrate for hearing by the trial court. In the case sub judice, the trial court properly referred Lisa's post-judgment contempt motion of January 11, 1999, to the magistrate under Civ.R. 53(C)(1)(a)(i). After James paid the required amount of spousal support, the magistrate issued an order on February 9, 1999, stating that the final divorce decree would not be vacated. As to the remaining issues in the contempt motion, including the request for resolution of the outstanding personal property items, the magistrate ordered the parties to attempt to resolve those issues. The matters heard before the magistrate on April 28, 1999, were those remaining, unresolved issues which originated from the post-judgment contempt motion. Therefore, the magistrate had the authority to issue a decision at the hearing in question because she was deciding a post-judgment motion. See Civ.R. 53(C)(1)(a)(i). Accordingly, James' first assignment of error is overruled.
ASSIGNMENT OF ERROR II
 THE TRIAL COURT ERRED AS A MATTER OF LAW BY MODIFYING A PERSONAL PROPERTY DIVISION MADE IN A JUDGMENT ENTRY OF DIVORCE UPON A PARTY'S POST JUDGMENT MOTION TO SHOW CAUSE.
In his second assignment of error, James asserts two separate issues. In the first part, James argues that the trial court erred by adopting the magistrate's decision to impose a "sale process" on the parties at the hearing of April 28, 1999, rather than appointing a third party to conduct a public auction. In the second part of his assignment of error, James asserts that the trial court erred by adopting the magistrate's decision to grant Lisa a $700 credit and deduct it from the amount due James after the sale. We will address each area of this assignment of error separately.
 I. Auction
James argues that the sale process imposed by the magistrate, and adopted by the trial court, violated R.C. 3105.171(I), which prohibits the modification of a property division made pursuant to R.C. 3105.171. He maintains that the items were supposed to be auctioned by a receiver at a public sale to the highest bidder if they were not resolved by the parties by November 25, 1998. We disagree.
It is axiomatic that a court speaks only through its journal entries.Schenley v. Kauth (1953), 160 Ohio St. 109, paragraph one of the syllabus. Such journal entries are to be construed like all other written instruments, i.e., giving the language of the instrument its ordinary meaning. Thompson v. Thompson (Oct. 29, 1990), Pickaway App. No. 89CA31, unreported, 1990 Ohio App. LEXIS 4965, at *4. Thus, where a court's journal entry is unambiguous, it needs no interpretation or construction. Cf. Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, 245-46.
A domestic relations court has the broad discretion and power to enforce its own orders. See R.C. 3105.011. It is well settled that a trial court has the right "to construe and clarify its own judgment, * * * and such construction does not amount to a modification of the judgment." Thomarios v. Thomarios (Dec. 27, 1989), Summit App. No. 14170, unreported, at 3; see, also, Peterson v. Peterson (Apr. 6, 1998), Butler App. No. CA97-09-169, unreported, 1998 Ohio App. LEXIS 1440, at *4-5 ("While a court may not modify a previous property division, it is permitted to clarify the original property division so as to effectuate its judgment.")
At the April 28, 1999 hearing, the magistrate stated the following:
 I would like to indicate to both parties, first of all, that an outside receiver is typically not appointed in a situation where you have personal property items. Therefore, in my interpretation of this [journal] entry [of November 12, 1998], I am going to act as the receiver and we will have an auction of the items and it will be resolved today.
 I would appreciate from both attorneys an opening statement with respect to how they would interpret the auction to be conducted.
The magistrate decided to conduct a process where one party would pick an item in dispute and set a price for the item. Then the second party had the right to buy it at that value. If the second party chose to not to buy the item, the first party would have to buy it at that price. At the end of the process, each party totaled up their purchases and determined who owed the other money. The process forced the party setting the price "to keep himself or keep herself honest in the bidding selection because * * * [i]f they pick an artificially low value, the other party has the right to take it at that value, [and] then they are spiting themselves."
The trial court held that the magistrate "properly interpreted the order [of November 12, 1998] by acting as a receiver and properly conducted an auction of the remaining personal property items still in dispute." It also noted that this type of auction was a common practice of the trial court.
We do not need to reach a decision of whether or not the "sale process" meets any definition of an auction. The magistrate's imposition of the "sale process" did not modify the previous division of marital property. It was merely the clarification and enforcement of the trial court's orders from November 12, 1998, which included the separation agreement. At the time of the hearing in question, the parties had not yet conducted an auction of the items set forth in Exhibit 2, as required. The language of the journal entry provided that if the auction was not conducted, "the court will take appropriate action to appoint a receiver regarding those items." As such, the trial court's journal entry is unambiguous. It is clear that the court gave no instructions as to how the receiver was to handle the resolution of the items in dispute. After a review of the record, this Court cannot find any language that stated the receiver was to conduct a public auction. Therefore, this Court cannot conclude that the trial court's decision was improper.
 II. Credit of $700
James has also argued that the trial court erred in adopting the magistrate's decision to grant Lisa a $700 credit against the balance she owed James after the sale. He contends that the trial court previously awarded Lisa a claim or chose in action as part of the property division and the magistrate had no authority to modify that award. This Court disagrees.
The trial court has broad discretion and power to enforce a separation agreement incorporated into a divorce decree. See Saeks v. Saeks
(1985), 24 Ohio App.3d 67, 70. This Court previously considered the matter of ambiguous clauses in separation agreements and held that:
 Whenever a clause in a separation agreement is deemed to be ambiguous, it is the responsibility of the trial court to interpret it. The trial court has broad discretion in clarifying ambiguous language by considering not only the intent of the parties but the equities involved. An interpretative decision by the trial court cannot be disturbed upon appeal absent a showing of an abuse of discretion.
In re Dissolution of Marriage of Seders (1987), 42 Ohio App.3d 155,156. Where there is confusion over the meaning of a particular clause, the trial court has the power to resolve the dispute. Id. at 157. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
The only evidence in the record of the disposition of the $700 credit was a handwritten note included in the separation agreement on the page that listed the personal property items in dispute. Specifically, the note stated, "she gets the $700 [`claim' or `down'] against David Mann; credit $500." The confusion as to whether this amount was a claim or a credit arises from the fact that the word describing the nature of the $700 is illegible. There was much dispute and discussion at the hearing as to whether Exhibit 2 stated that the money was a claim against a third party or a down payment.
If the money was a claim, James argued that Lisa had a chose in action against David Mann, the third-party purchaser of a marital vehicle. If the money was a down payment, Lisa argued it was separate property as proceeds from a vehicle that she owned before the marriage. She used the money as a down payment on another car purchased during the marriage that was later sold. In that instance, the $700 would qualify as a credit. In either case, the lack of clarity in the separation agreement regarding the status of the $700, makes this provision, at best, ambiguous. Either party's interpretation could have been found by the trial court to be the interpretation meant by the note in the separation agreement. In view of the ambiguity as to the status of the $700 and the discretion given to a trial court in interpreting its own orders, we find that the trial court did not abuse its discretion. James' second assignment of error is overruled.
James' two assignments of error are overruled and the judgment of the trial court is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ____________________ LYNN C. SLABY
FOR THE COURT, BAIRD, P. J., CONCURS, CARR, J., CONCURS IN JUDGMENTONLY
[1] An earlier appeal by James was dismissed for lack of a final, appealable order. The trial court modified and corrected its prior journal entry nunc pro tunc.