Appellant appeals the trial court's order awarding spousal support, including attorney fees, to appellee and ordering the sale of the marital home. Because the record indicates the trial court did not abuse its discretion, we affirm.
Appellant and appellee were married on March 15, 1958.[1]
Appellee filed her complaint seeking a legal separation on August 30, 1996. Trial commenced on December 5, 1997. As of the trial date, appellant was eighty-one years old; appellee was seventy-two years old.
Appellee testified that she and appellant were married on March 15, 1958. Four children were born to the couple, all prior to the parties' marriage. The children all were emancipated at the time of the trial. Both parties had prior spouses and children from prior marriages.
In May of 1953, the parties purchased a residence located at 1688 East 85th Street. Appellee testified that the home was purchased on a land contract with money from a joint savings account the parties had established, and monthly payments were then made by both parties until the home was paid for in full. The total cost of the home was $12,500.00.
Subsequently, the parties jointly refinanced the home. The couple had completed the payments on the refinancing prior to 1974.
In 1979, appellant and appellee signed documents for additional loans in order to make improvements on the home. Appellant testified that he later replaced the roof at a cost of $5,000 to him, with no contribution from appellee. In 1987, appellant purchased a vacant lot next to the residence. Appellee did not contribute to his purchase of the lot.
Appellant estimated that the residence was worth approximately $25,000 at time of trial. On a pre-trial statement filed with the court, appellee had estimated that the home was worth $80,000.00. An independent appraiser estimated that the home, including the neighboring vacant lot purchased by appellant, was worth $34,000.00.
Appellee testified that she first moved out of the residence in 1978 or 1979 after appellant beat her. She went to live with a daughter in Dayton and later moved to Illinois. When appellant came to Illinois to ask her to return, she did. She testified that appellant soon attacked her again and, in 1980, she left and went to live with her daughters Marguerite and Betty in Texas. Although appellant testified that appellee left the residence in 1974, the evidence indicates that appellee's recollection was likely more accurate; loan documents and a contract for repairs to be performed on the residence were signed by both appellant and appellee in 1979. Additionally, the testimony of Marguerite corroborated the time frame testified to by appellee.
Since she left the residence the second time, appellee has continued to live with Marguerite. She has received no money from appellant since her departure in 1980. Appellee's current income consists solely of Social Security benefits in the amount of $292 per month. She continues to have health insurance coverage through appellant's prior employer.
Regarding her physical health, appellee testified that she had both her uterus and left kidney removed due to cancer. She is also diabetic and suffers from high blood pressure. Additionally, appellee testified that she suffered back problems in the 1970's and still experiences back pain.
According to appellant, the couple married in 1957. In 1973 or 1974, he began to receive his pension, approximately $200 per month at that time, and also began to receive Social Security benefits of approximately $300 per month because he was "on disability." However, appellant testified that he received no disability benefits and did not specify from what disability he suffered.
Appellant's current income is $1,281 per month, consisting of $488 from his pension and Social Security in the sum of $793.00.
On the issue of attorney fees, appellee testified that at the time of trial, she had expended $1,100 in attorney fees. In addition, appellee's current and prior attorneys testified regarding their respective backgrounds and involvement with the case. Appellant's first attorney acknowledged receiving $1,100 in fees. He testified that appellee had incurred fees in the amount of $2,682.50 at the time of the trial. The attorney who subsequently represented appellee testified that his fees amounted to $687.50 prior to trial, and he anticipated an additional $825 during the trial.
The lower court issued its judgment entry on June 24, 1997, and thereafter filed a corrected entry, nunc pro tunc. In pertinent part, the court ordered that the parties sell their residence and equally divide the net proceeds. The court also ordered appellant to pay to appellee the sum of $408 per month in spousal support and the sum of $1,000 toward appellee's attorney fees. Appellant timely appealed the trial court's judgment.
Appellant's first assignment of error states:
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY AWARDING SPOUSAL SUPPORT TO APPELLEE, INCLUDING ATTORNEY FEES.
When determining whether spousal support is warranted, a trial court must take into consideration all of the factors enumerated in R.C. 3105.18(C)(1)[2] and should not base its determination upon any one of the factors listed taken in isolation. See Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, at paragraph one of the syllabus.
R.C. 3105.18 provides:
 (C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or installments, the court shall consider all of the following factors:
 (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 [3105.17.1] of the Revised Code;
(b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
 (h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
The trial court's judgment entry specifically addressed each of these criteria.
The trial court noted that, as of the trial date, appellee's total income consisted of $292 per month in Social Security. Appellant's monthly income is $1,281, consisting of his pension, now amounting to $488 per month, and Social Security in the amount of $793 per month. R.C. 3105.18(C)(1)(a). Moreover, the court acknowledged that the parties were elderly; at the time of trial, appellant was eighty-one years old, appellee was seventy-two years old. Both parties had retired. R.C. 3105.18
(C)(1)(b) and (d).
In addition, the trial court noted that appellee had uterine cancer and kidney cancer and also suffered from glaucoma, high blood pressure and diabetes. She became disabled in the 1970's. The trial court further found that appellant had submitted no testimony that he "suffers from any physical, mental or emotional difficulties." R.C. 3105.18(C)(1)(c).
The court additionally found that the duration of the marriage was from March 15, 1956 until December 5, 1997. The court concluded that "the most believable testimony" was that of appellee and the parties' daughter that the parties finally separated in 1980. R.C. 3105.18(C)(1)(e).
The trial court therefore concluded that appellee was entitled to spousal support and awarded her $408 per month until the proceeds of the home were received; upon receipt of the proceeds, the support would be reduced to $255 per month. In addition, the court ordered that appellant pay the sum of $1,000 towards appellee's attorney fees.
The trial court enjoys broad discretion in fashioning an equitable division of marital property and in awarding spousal support. Babka v. Babka (1992), 83 Ohio App.3d 428, 432, citingBlakemore v. Blakemore (1983), 5 Ohio St.3d 217, 218; Cherry v.Cherry (1981), 66 Ohio St.2d 348, paragraph two of the syllabus. On appeal, the trial court's determination will not be overturned absent an abuse of discretion. Blakemore, supra.
The Ohio Supreme Court considered the definition of an abuse of discretion in Wilmington Steel Products, Inc. v. Cleve. Elec.Illum. Co. (1991), 60 Ohio St.3d 120, 122, noting that its role:
 * * * is to determine whether the trial judge's decision was an abuse of discretion, not whether it was the same decision we might have made. Wargo v. Price (1978), 56 Ohio St.2d 65, 10 O.O.3d 116, 381 N.E.2d 943. Not only is our role limited to review, but the review itself has narrow limits:
 "* * * We have repeatedly held '[t]hat the term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" Huffman v. Hair Surgeon, Inc.
(1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126, 482 N.E.2d 1248, 1252.
Appellant first maintains that the court's determination that there was no testimony from appellant that he suffered from any physical, mental or emotional difficulties was erroneous. Appellant argues that he testified that he began to receive Social Security benefits at the age of fifty-seven because he "was on disability."
However, appellant also testified that he received no disability benefits and also failed to specify any disability from which he suffered. Appellant's testimony in reference to being "on disability" does not equate to testimony that he suffered from physical, mental or emotional difficulties.
Appellant next contends that the trial court incorrectly considered the duration of the marriage to be from March 15, 1956 until December 5, 1997. It is appellant's position that the court should have utilized a de facto termination date since, according to appellant, the parties ceased cohabitation in 1974.
Appellant's reliance is misplaced. The court considered the "duration of the marriage" as one of the factors in awarding spousal support pursuant to R.C. 3105.18(C)(1)(e). Appellant is apparently attempting to utilize R.C. 3105.171(A)(2), which defines the term "during the marriage" as whichever of the following is applicable:
 (a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;
 (b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court.
A de facto termination date may be relevant when equity requires the valuation of the marital assets at a date prior to the final date of the proceedings. See Gullia v. Gullia (1994), 93 Ohio App.3d 653.
In the matter sub judice, the trial court merely considered the actual length of time of the marriage. There was no need for the court to apply a de facto termination date.
Applying the relevant factors enumerated in R.C. 3105.18
(C)(1), it is evident that the trial court did not abuse its discretion. Appellee's monthly income is $292 compared with appellant's $1,281.00. Both parties are elderly; however, appellee suffers from multiple serious health problems. Moreover, the parties lived together for more than twenty years. The trial court was well within its discretionary powers when it awarded spousal support to appellee.
Appellant's final contention in his first assignment of error is that the trial court improperly awarded attorney fees to appellee in the sum of $1,000.00. An award of attorney fees in a domestic relations action is within the sound discretion of the trial court. Gullia v. Gullia, supra, at 661, citing Swanson v.Swanson (1976), 48 Ohio App.2d 85. The Swanson court noted that the factors enumerated in DR 2-106 (B), Code of Professional Responsibility (1970), 23 Ohio St.2d, offer guidelines for determining the reasonableness of a fee. Swanson, supra at 90-91.
DR 2-106 provides that the following factors should be considered when assessing the reasonableness of a fee:
 (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
 (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
 (3) The fee customarily charged in the locality for similar legal services.
(4) The amount involved and the results obtained.
 (5) The time limitations imposed by the client or by the circumstances.
 (6) The nature and length of the professional relationship with the client.
 (7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
(8) Whether the fee is fixed or contingent.
In the matter sub judice, the trial court determined that appellee was entitled to $1,000 toward her attorney fees pursuant to the criteria enumerated inSwanson. Applying the above enumerated factors to the testimony in the record regarding attorney fees indicates that the trial court did not abuse its discretion when it made such an award.
Our review of the record in this matter indicates that the trial court did not abuse its discretion when it awarded spousal support to appellee, including its award of attorney fees. Appellant's first assignment of error is therefore overruled.
Appellant's second assignment of error states:
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY ORDERING THE SALE OF THE MARITAL RESIDENCE AND THE EQUAL DIVISION OF THE PROCEEDS THEREOF, CONTRARY TO THE LAW OF ADVERSE POSSESSION, AND THE DOCTRINES OF EQUITABLE ESTOPPEL, LACHES AND WAIVER.
Appellant next contends the trial court erred when it failed to conclude that appellant was the sole owner of the property since appellee "abandoned her husband and the home in 1974."
R.C. 3105.171 provides for the equitable division of marital and separate property. R.C. 3105.171 (J) provides:
 The court may issue any orders under this section that it determines equitable, including, but not limited to, either of the following types of orders:
 (1) An order granting a spouse the right to use the marital dwelling or any other marital property or separate property for any reasonable period of time;
 (2) An order requiring the sale or encumbrancing of any real or personal property, with the proceeds from the sale and the funds from any loan secured by the encumbrance to be applied as determined by the court.
Thus, the court is specifically given the authority to order the sale of property when it is equitable.
The court noted that there was "substantial controversy" regarding the home's value. Additionally, the court correctly acknowledged that neither party's income would allow a possible "buy out" of the other's interest in the home. Under these circumstances, the trial court's decision to sell the marital home and divide the proceeds is certainly appropriate and does not constitute an abuse of discretion.
Furthermore, appellant's arguments regarding the application of adverse possession, laches, equitable estoppel and waiver need not be addressed by this court. Appellant failed to raise any of these issues in the court below; he has therefore waived his right to raise these issues in this court.[3]
Appellant's second assignment of error is overruled.
It is ordered that appellee recover of appellant her costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Court of Common Pleas, Domestic Relations Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE. P.J. and LEO M. SPELLACY. J, CONCUR
[1] There were several discrepancies in the record regarding the date of the parties' marriage. Appellee's complaint for legal separation alleged the parties were married in 1956; her motion for alimony pendente lite shows a correction from 1956 to 1958. At trial, appellee testified the parties were married in 1958; appellant testified the marriage occurred in 1957. The court, in its judgment entry, utilized 1956 as the year of the marriage.
[2] Formerly R.C. 3105.18 (B).
[3] Additionally, appellant had already waived his affirmative defenses in the trial court. Civ.R. 8 (C) requires a party to "set forth affirmatively * * * estoppel, * * * laches, * * * waiver, and any other matter constituting an avoidance or affirmative defense." "An affirmative defense is waived under Civ.R. 12 (H), unless it is presented by motion before pleading pursuant to Civ.R. 12 (B), affirmatively in a responsive pleading under Civ.R. 8 (C), or by amendment under Civ.R. 15. State exrel. The Plain Dealer Publishing Co. v. Cleveland (1996), 75 Ohio St.3d 31,33, citing Hoover v. Sumlin (1984), 12 Ohio St.3d 1, 4. Appellant's failure to comply waived these defenses.