JOURNAL ENTRY AND OPINION
Defendant-appellant, Charles Thomas, appeals from the judgment of the trial court granting a divorce to defendant and plaintiff, Sheila Thomas. On appeal, husband argues that the trial court erred in the following: (1) awarding indefinite spousal support without enumerating substantiating factors, (2) awarding excessive spousal support, (3) awarding excessive attorney fees, and (4) incorporating the magistrate's decision without independent review. For the reasons that follow, we find no merit to these claims of error and affirm the judgment of the court below.
 FACTS
At the time that Sheila and Charles Thomas were married on June 13, 1970, Sheila Thomas was in the eleventh grade at John Hayes High School and was pregnant with their first child. Ms. Thomas dropped out of high school to get married and has been a housewife ever since. She has held only one job, working in a chemical factory when she was fifteen years old. She has had job training in key punch operation, but new technology has made those skills obsolete. Ms. Thomas has no other employment experience.
Additionally, Ms. Thomas has a seizure disorder and suffers from a sleep disorder. She presented testimony from her treating physician to support her claim that these physical problems currently prevent her from working.
Mr. Thomas has worked as a truck driver for over twenty years, and made over $72,000 in both 1996 and 1997. He also had a side business lithographing T-shirts with people's pictures. He claims that he closed the T-shirt business down prior to leaving the marital home, but Ms. Thomas claims he was running the business out of the marital home until the Garfield Heights Municipal Court placed a protective order against him forbidding him from going to the home or contacting Ms. Thomas or their two grown children.
Ms. Thomas alleges that Mr. Thomas had a history of physical and emotional abuse, which Mr. Thomas denies. Mr. Thomas claims that Ms. Thomas contributed nothing to the marriage and merely lived off his income.
In 1986, Ms. Thomas filed for divorce from defendant. She withdrew her complaint when Mr. Thomas promised to get counseling. She refiled for divorce on March 12, 1997. The parties agreed to a judgment entry concerning financial matters on May 15, 1997 in which Mr. Thomas agreed to pay the mortgages on both their properties, and to pay the utilities for both properties. At a show cause hearing held on September 28, 1998, Mr. Thomas admitted that he had failed to pay the mortgage on the marital home for three months; that he knew the home was in foreclosure; that he had failed to pay the electric bill on the marital home; and that he knew that Ms. Thomas had been living without electricity since July 24, 1998. (As of February 1999, Ms. Thomas was still without electricity in the marital home.)
Ms. Thomas was unable to reinstate electrical service because Mr. Thomas had had the account transferred to his name with a confidentiality order and had had the bills sent to his mother's home. Ms. Thomas had no warning that the electricity was to be turned off, and could not reinstate it without paying a fee of $700. Despite a court order to pay the fee and reinstate the service, Mr. Thomas failed to do so. Mr. Thomas claimed that he was unable to work during May and part of June because he was suffering from anxiety and depression, but he did not provide any properly authenticated medical records or other evidence to substantiate this claim.
Mr. Thomas fired his first attorney. His second attorney resigned reciting the following reasons: irreconcilable differences * * * which have made it unreasonably difficult for [me] to zealously represent Charles Thomas. There are also ethical issues which would disallow me to represent him under the circumstances. (Motion to Withdraw filed May 22, 1998.) Mr. Thomas then fired her on June 2, 1998. The pretrial phase of the case lasted 18 months, with many of the delays a result of the court granting time to Mr. Thomas to obtain new counsel. Just prior to trial, a third attorney contacted Ms. Thomas's counsel on Mr. Thomas's behalf, but this attorney failed to make an appearance on the record. Mr. Thomas finally proceeded at trial pro se.
The Magistrate ordered Mr. Thomas to pay $2,377.00 as spousal support, and ordered the wife to pay the mortgage and utilities from that money. However, Mr. Thomas objected to the order on December 4, 1998, and the order was vacated on December 10, 1998. The court readopted its order on December 21, 1998.
In its final Judgment Entry, the Court ordered Mr. Thomas to pay spousal support to Ms. Thomas of $2,295.00 per month, continuing until further order of the Court, subject only to either party's death, or Plaintiff's remarriage or cohabitation with an unrelated male in a relationship that is tantamount to marriage. Mr. Thomas also was ordered to pay $12,000 as and for additional spousal support for her attorney fees.
Ms. Thomas was awarded the Garfield Heights home, and she was to assume the mortgage payments on that home. She was awarded her 1988 Toyota. Mr. Thomas was awarded his van, his Jaguar automobile, the couple's rental property, the couple's time-share property, his equipment for making T-shirts, and his other tools. Appellant's first assignment of error states:
 THE TRIAL COURT ERRED IN AWARDING INDEFINATE [sic] SPOUSAL SUPPORT WITHOUT ENUMERATING SUBSTANTIATING FACTORS.
Although indefinite spousal support is uncommon, it is sometimes appropriate. As the Court stated in Kunkle v. Kunkle (1990),51 Ohio St.3d 64, 69, [I]f under reasonable circumstances a divorced spouse does not have the resources, ability, or potential to become self-supporting, then an award of sustenance alimony for life would be proper. Kunkle at 69.
The legislature has delineated the substantiating factors which a trial court shall consider in determining an award of spousal support:
 (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 * * * of the Revised Code;
(b) The relative earning abilities of the parties;
 (c) The ages and physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
(h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
R.C. 3105.18(C)
The magistrate's report, which the court adopted on January 19, 1999, addresses all statutory factors for awarding spousal support. Through the magistrate's report, the court made the following findings:
 The parties have no current income from the property divided, disbursed or distributed under 3105.171. Husband made $72,186.86 in 1996, $72,913.79 in 1997, and approximately $65,704.50 in 1998. The parties stipulated to the division of the retirement benefits accrued by husband over the course of the marriage.
At the time of trial wife was 45 years old and had physical problems which impaired her ability to be employed.
 Her condition is chronic but treatable. Although the potential for seizures and the restrictions created thereby, as well as the sleep apnea, constitute a disability at the present time, [her treating physician] believes that if these conditions were controlled Plaintiff would be employable in the future. * * * [E]ven assuming Plaintiff becomes employable, her minimal education and absence of any work history will severely restrict her employment prospects.
(Magistrate's Report at 6.)
Husband was 46 years old at the time of trial. Although he was complaining of stress-related health problems, he presented no admissible evidence to substantiate these claims.
The parties' children were both adults at the time of the divorce.[1]
The magistrate noted that the duration of the marriage was 28 years, and stated that wife should not be forced to rely on her children for support when she has a husband of 28 years who has the ability to assist her. (Magistrate's Report at 7.)
The magistrate's report closely examined the standard of living established by the parties during the marriage. Husband insisted repeatedly that wife could live on $700.00 per month, and he refused to consider any spousal support over that amount. The magistrate's report listed all the monthly expenses required for plaintiff's sustenance and concluded that those expenses are reasonable and necessary for wife to maintain an acceptable standard of living.[2] Additionally, the magistrate considered husband's monthly expenses and concluded that he could continue his present standard of living with the amount of spousal support awarded. Thus after assessing the impact on each of the parties' standard of living, the court awarded wife spousal support in the amount of $2,295.00 per month. (Judgment entry at 2-3.)
In its decision to award spousal support, the magistrate's report addressed the relative assets and liabilities of the parties, including court ordered payments. The report discussed the assets and liabilities, and the division of them, for four pages.[3] In addition, the court assessed the tax consequences of the spousal support for both parties.[4]
The report also considered the extent of the parties' education.[5]
It noted that wife lacked a high school diploma and found, even assuming Plaintiff becomes employable, her minimal education and absence of any work history will severely restrict her employment prospects.[6] Wife had no marketable skills. Wife completed a key-punch operator program, but this skill is now obsolete. The report concluded that wife was not a good candidate for vocational training, both because of her poor health, and because of her lack of education and work history.
In fact, wife had no work history. Wife stayed home to raise the children of the marriage and thereby lost the opportunity to establish herself in the workplace. Thus 3105(C)(1)(m) is pertinent in this case. This portion of the statute requires the court to assess the lost income production capacity of either party that resulted from that parties' marital responsibilities.
 Finally, 3105.18(C)(1)(n)states that the court shall consider [a]ny other factor that the court finds expressly to be relevant and equitable. The magistrate's report, which was adopted by the court, considered wife's special needs when it discussed her need to have someone living with her so that when she had a medical emergency someone was available to call for help and to transport her to the hospital if necessary. Because her disability prevents her from driving, wife's adult children live with her and drive her to appointments and shopping as needed. They also provide her with care as needed. By allowing wife to remain in the marital home, the court's order made it possible for her children to remain with her and assist in her care.
Because the magistrate and the trial court took into consideration relevant and equitable factors and carefully reviewed the factors specified by statute when it awarded spousal support, husband's first assignment of error is not well taken.
Appellant's second assignment of error states:
 THE SPOUSAL SUPPORT WAS CLEARLY EXCESSIVE.
This court is limited in its review of the trial court in an award of spousal support. A reviewing court cannot substitute its judgment for that of the trial court unless, considering the totality of the circumstances, the trial court abused its discretion. Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67, citing Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 541 N.E.2d 597, 599. The trial court carefully analyzed the effect that the amount of spousal support awarded would have on both parties. There is nothing in either the magistrate's report or the Judgment Entry which would indicate any abuse of discretion. Indeed, the trial court, through the magistrate's report, carefully considered the needs of both parties in its decision regarding the amount of spousal support awarded.
Thus defendant's second assignment of error lacks merit and is overruled.
Appellant's third assignment of error states:
 THE AWARD OF ATTORNEY FEES WAS CLEARLY EXCESSIVE.
In claiming that the amount of attorney fees awarded was excessive, husband argues that [wife] sought recompense for defense of a civil matter outside of the divorce. (Appellant's Brief at 7.) Husband also claims that he should have had forewarning that wife's attorney fees would be higher because husband was pro se, and that [t]here was no indication that the [husband] was put on notice that attorneys fees were being attached to given instances of action or inaction.
Ohio Revised Code 3105.18(H) authorizes the court to award attorney fees in divorce proceedings. It states:
 In divorce * * * proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings * * * if it determines that the other party has the ability to pay the attorney fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney fees.
The standard of review for an award of attorney fees was stated by this Court in Swanson v. Swanson (1976), 48 Ohio App.2d 85, 90,
 In making an award of attorney fees as alimony, considerationmust be given to the reasonableness of the attorney fees and to the special criteria used in the granting of an alimony award. * * * Upon appeal the only questions for inquiry are whether the factual conclusions upon which the trial court based the exercise of its discretion were against the manifest weight of the evidence; or, whether there was an abuse of discretion.
Husband has claimed that he lacks the financial resources to fulfill the court-ordered obligations, including the award of attorney fees. However, the magistrate found his testimony less than credible concerning his financial condition. Specifically, the magistrate found husband's testimony regarding his financial condition less credible than his mother's testimony regarding husband's sporadic payment of room and board to her for staying in her home. Moreover, the magistrate did not find either of their testimony credible regarding loans husband claimed his mother had made to him. After reviewing his testimony, the magistrate found that husband had more discretionary income than he claimed.
Because of appellant's failure to file the transcript, we must accept the findings of fact as stated by the magistrate. As the court below noted, husband's own behavior generated many of the fees he now claims are excessive. He fired two attorneys during the pendency of the case and requested numerous continuances of the trial, claiming he needed to obtain counsel. After eighteen months of delays, the court, through the magistrate, proceeded with the trial with husband pro se.
Additionally, many of the attorney fees are for motions to show cause and for motions for contempt, all of which were caused solely by husband's failing to obey court orders. He cannot now claim he was not notified that he would be charged with some of the cost of these motions, when his disregard for the court was the cause of the costs. When in contempt of court for failing to pay court-ordered alimony, husband, by law, is responsible for any reasonable attorney's fees of any adverse party, as determined by the court, that arose in relation to the act of contempt. R.C. 3105.18(G).
Husband further claims that some of the fees incurred were for defense of a civil matter outside of the divorce. The civil matter he references is the foreclosure action on the marital home, which action is not unrelated to the case at hand. Husband was responsible for wife incurring those attorneys fees when he allowed the house to go into foreclosure. Husband had signed an Agreed Judgment Entry in which he committed to paying the mortgage on the marital home. His subsequent failure to make any payments on the mortgage caused the home to go into foreclosure. Wife's counsel was required to defend against that foreclosure action. For husband to claim that this matter is unrelated to the divorce action is disingenuous; the foreclosure action was a direct result of his failure to comply with the domestic relations court's order to pay the mortgage.
The magistrate's report stated:
 The Magistrate finds that Defendant has shown a complete disregard for Plaintiff's economic welfare throughout the pendency of the divorce. His failure to pay the mortgages and utilities for the marital home is unconscionable. Because Defendant refused to pay the lump sum necessary to restore service, Plaintiff has been without lights since July.
(Magistrate's Report at 9.)
The plaintiff-appellee's attorney fees totaled over $23,000.
 Considering Defendant's ability to pay and given the extent to which the amount of Plaintiff's fees are attributable to acts by the Defendant which served to prolong the process as a whole, and considering Defendant's contempt of the temporary orders, the Magistrate finds that Defendant shall be responsible for paying $12,000.00 towards Plaintiff's attorney fees.
(Magistrate'sReport at 14.) The trial court was quite reasonable to husband in requiring him to pay less than half the attorney fees, because a substantial portion of the fees was the direct result of his misbehavior. (Judgment entry at 9.)
Thus husband's third assignment of error is not well taken and is overruled.
For his fourth assignment of error, appellant states:
 THE TRIAL COURT ERRED IN INCORPORATING THE MAGISTRATE DECISION WITHOUT INDEPENDENT REVIEW.
First, it must be noted that although husband timely filed his objections to the magistrate's report, he failed to file a copy of the transcript with the trial court when he filed his objections. Civil Rule 53(E)(3) provides the procedures which must be followed in filing objections to a magistrate's report. The Rule states in subsection (a) that the objections must be filed [w]ithin fourteen days of the filing of the magistrate's decision * * *. The Rule further states in subsection (b) that [a]ny objection to a finding of fact shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that fact or an affidavit of that evidence if a transcript is not available. Thus, by failing to file a copy of the transcript when he filed his objections, husband has waived any objections to the findings of fact contained in the Magistrate's Report. [A]bsent a transcript or appropriate affidavit as provided in the rule, a trial court is limited to an examination of the referee's [magistrate's] conclusions of law and recommendations, in light of the accompanying findings of fact only[,] unless the trial court elects to hold further hearings. Wade v. Wade (1996), 113 Ohio App.3d 414, 418. See also Duncan v. Chippewa Township Trustees (1995), 73 Ohio St.3d 728, 730; Chaney v. East (1994)97 Ohio App.3d 431, 435; Helton v. Helton (1995), 102 Ohio App.3d 733,736. Thus the trial court confined its review of husband's objections to issues of law based upon the findings of fact presented by the magistrate. This court is similarly confined.
 When a party objecting to a referee's report has failed to provide the trial court with the evidence and documents by which the court could make a finding independent of the report, appellate review of the court's findings is limited to whether the trial court abused its discretion in adopting the referee's report, and the appellate court is precluded from considering the transcript of the hearing submitted with the appellate record. High v. High (1993), 89 Ohio App.3d 424, 427, 624 N.E.2d 801, 802-803; Civ.R. 53(E)(6); Proctor v. Proctor (1988), 48 Ohio App.3d 55, 548 N.E.2d 287; see, also, Purpurav. Purpura (1986), 33 Ohio App.3d 237, 575 N.E.2d 27. In other words, an appeal under these circumstances can be reviewed by the appellate court to determine whether the trial court's application of the law to its factual findings constitutes an abuse of discretion.
Duncan v. Chippewa Township Trustees (1995), 73 Ohio St.3d 728, 730.
In his brief, husband claims that The Trial Court did not expressly rule on the objections made to the magistrate report. (Appellant's Brief at 8.) The first two sentences of the Court's Judgment Entry, however, state:
 Upon due consideration thereof, the Court finds that the Objections to the Decision of the Magistrate are not well taken and should be overruled. . . . IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Objections of the Defendant to the Decision of the Magistrate be and the same are hereby overruled, and the Magistrate's Decision is hereby adopted in its entirety.
(Judgment Entry at 1.) Accordingly, this objection of husband is without merit.
The next objection raised by husband is his claim that the judgment entry did not contain the appropriate legal standards which are used to determine spousal support, attorney fees and property division. However, the Judgment Entry expressly adopted the magistrate's report in its entirety. The magistrate's report extensively analyzed the proper legal standards for spousal support and attorney fees. This portion of husband's objection is not well taken. The court also extensively considered the property division, ensuring that each party would be housed and able to provide for his or her needs. Husband retained both his vehicles, one of the homes owned by the family, and his vacation time-share. Wife retained one home and one car. There is no evidence that this division is less than fair, or that it demonstrates an abuse of the trial court's discretion. Husband's final assignment of error is overruled.
It is ordered that appellee recover of appellant her costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Domestic Relations Division of the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ________________________________________ DIANE KARPINSKI, PRESIDING JUDGE
JOHN T. PATTON, J., and LEO M. SPELLACY, J., CONCUR.
[1] R.C. 3105.18(C)(1)(f), which requires the court to consider the effect of minor children on the need for spousal support, is therefore inapplicable.
[2] This finding satisfied R.C. 3105.18(C)(1)(g).
[3] This section satisfied R.C. 3105.18(C)(1)(i).
[4] This section satisfied R.C. (C)(1)(l).
[5] This finding satisfied 3105.18(C)(1)(e).
[6] Since neither of the parties has any college education, much less a professional degree, 3105.18(C)(1)(j) is not applicable in this case.