DECISION AND JUDGMENT ENTRY
{¶ 1} Jessie Johnpillai appeals the Ross County Common Pleas Court's judgment finding him guilty of possession of a deadly weapon while under detention, a violation of R.C. 2923.131(B). Johnpillai contends that the record does not contain sufficient evidence to support his conviction. Because we find that the record contains evidence which, if believed, supports a finding that Johnpillai possessed a deadly weapon while under detention, we disagree. Johnpillai also contends that his conviction is contrary to the manifest weight of the evidence. Because we find that the state presented substantial evidence upon which a reasonable trier of fact could find that the state established all the essential elements of the offense beyond a reasonable doubt, we disagree. Accordingly, we overrule Johnpillai's assignment of error and affirm the judgment of the trial court.
 I. {¶ 2} The Ross County Grand Jury indicted Johnpillai on one count of possession of a deadly weapon while under detention in violation of R.C. 2923.131(B), and one count of felonious assault in violation of R.C. 2903.11. Johnpillai pled not guilty, and the case proceeded to a jury trial.
 {¶ 3} Steve Seitz, a corrections officer at the Ross Correctional Institution, testified that he responded to a radio report of an altercation in front of one of the prisoners' housing units. When Officer Seitz went to the area, he discovered Johnpillai there. Officer Seitz noticed that Johnpillai was wearing yellow gloves, which he felt was unusual since it was not a particularly cold May morning. He conducted a pat down search of Johnpillai, and discovered a silver metal shank in the right pocket of Johnpillai's state issued jacket. The shank was not similar to the knife-like shanks often crafted by prisoners. Rather, this shank was shaped like an ice pick.
 {¶ 4} Inmate Jeffrey Rivera informed prison officials that he was involved in the altercation with Johnpillai. Rivera testified at trial that he and Johnpillai had an argument the day before the altercation. The next day, he tapped Johnpillai on the shoulder in order to mend fences with him. Rivera testified that Johnpillai immediately attacked him with a silver shank in his right hand. Rivera further testified that Johnpillai struck him, and caused a puncture wound to his head.
 {¶ 5} Ohio State Trooper Michael Maughmer investigated the incident. He took possession of the shank and Johnpillai's gloves, which he described as blood stained. Tpr. Maughmer did not check for fingerprints on the shank, nor did he test the gloves to determine whether the substance on the gloves was blood and, if so, whose blood. Tpr. Maughmer testified that he took statements from Rivera and Johnpillai, but was unable to find any other witnesses who recalled anything about the incident.
 {¶ 6} Eduardo Bonilla, another inmate at the Ross Correctional Institution, testified on Johnpillai's behalf. Bonilla testified that he saw Rivera threaten Johnpillai with a shank the day before the altercation. Bonilla also testified that he never saw Johnpillai with a shank. Finally, Bonilla conceded that he did not see either Rivera or Johnpillai with a shank on the day of the altercation, and that he did not witness the altercation.
 {¶ 7} The jury returned a verdict of guilty on count one of the indictment, possession of a deadly weapon while under detention, and a verdict of not guilty on count two of the indictment, felonious assault. The trial court sentenced Johnpillai to six years in prison on the charge of possession of a deadly weapon while under detention, to be served consecutively with his current prison sentence.
 {¶ 8} Johnpillai timely appeals, asserting the following assignment of error: "THE VERDICT OF THE JURY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE." In his statement of the issue, Johnpillai posits whether the state presented sufficient evidence to prove the element of possession beyond a reasonable doubt.
 II. {¶ 9} Johnpillai combines and confuses the issues of sufficiency of the evidence and manifest weight of the evidence. The two issues, while similar, each present a distinct inquiry. In the interest of justice, we will address both issues here, despite Johnpillai's failure to set forth each in its own assignment of error.
 {¶ 10} R.C. 2923.131(B) provides that a person who possesses a deadly weapon while under detention at a detention facility is guilty of the crime of possession of a deadly weapon while under detention. "Possession" is a voluntary act "if the possessor knowingly procured or received the thing possessed, or was aware of his control thereof for a sufficient time to have ended his possession." R.C. 2901.21(C)(1).
 {¶ 11} When reviewing a case to determine whether the record contains sufficient evidence to support a criminal conviction, our function "is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. See, also, Jackson v.Virginia (1979), 443 U.S. 307, 319. This test raises a question of law and does not allow the court to weigh the evidence. Statev. Martin (1983), 20 Ohio App.3d 172, 175. Rather, this test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. Accordingly, the weight given to the evidence and the credibility of witnesses are issues for the trier of fact. State v. Thomas (1982),70 Ohio St.2d 79, 79-80; State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 12} Here, the state presented evidence that Rivera saw Johnpillai holding a shank in his right hand. Additionally, the state presented evidence that Officer Seitz found a shank in Johnpillai's right jacket pocket. Viewing this evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found the element of possession proven beyond a reasonable doubt. Accordingly, we find that the record contains sufficient evidence to support Johnpillai's conviction.
 {¶ 13} Even when a verdict is supported by sufficient evidence, we may nevertheless conclude that the verdict is against the manifest weight of the evidence because the test under the manifest weight standard is much broader than that for sufficiency of the evidence. State v. Banks (1992),78 Ohio App.3d 206, 214; State v. Martin (1983), 20 Ohio App.3d 172,175.
 {¶ 14} In determining whether a criminal conviction is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted.State v. Garrow (1995), 103 Ohio App.3d 368, 370-71; Martin,20 Ohio App.3d at 175. "A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." State v.Eskridge (1988), 38 Ohio St.3d 56, paragraph two of the syllabus.
 {¶ 15} The trier of fact is free to believe or disbelieve a witness's testimony in whole or in part. State v. Wagner (Feb. 29, 2000), Pickaway App. No. 99CCA23, citing Swanson v. Swanson
(1976), 48 Ohio App.2d 85, 97. Additionally, whether the evidence supporting a defendant's conviction is direct or circumstantial does not bear on our determination. "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof."Jenks, 61 Ohio St.3d 259 at paragraph one of the syllabus.
 {¶ 16} Johnpillai contends that his conviction on the possession charge is contrary to the manifest weight of the evidence because the jury chose to disbelieve Rivera's testimony regarding the felonious assault. He reasons that, because the jury acquitted him on the felonious assault charge, it found that Rivera's testimony was not worthy of belief. Instead, he feels the jury should have accepted the theory that Rivera planted the shank on him without his knowledge. Thus, he contends that the jury lost its way in resolving conflicts in the evidence when it convicted him of possession of a deadly weapon while under detention.
 {¶ 17} As we noted above, the jury was free to believe or disbelieve Rivera's testimony in whole or in part. Therefore, the jury could disbelieve part of Rivera's testimony, such as the part where Rivera claimed that when he approached Johnpillai, he did not attack Johnpillai or otherwise cause him to act in self defense. At the same time, the jury could believe other parts of Rivera's testimony, such as his statement that he saw a silver shank in Johnpillai's right hand. The record also contains evidence that Rivera sustained a puncture wound, which the jury could infer was consistent with a wound inflicted with an ice pick or similar device. While Johnpillai's self defense theory may have persuaded the jury to find that the state did not prove felonious assault beyond a reasonable doubt, the jury could rely on the wound as circumstantial evidence that Johnpillai, and not Rivera, possessed the shank during the altercation. In addition, the jury could discredit Johnpillai's "plant" theory by (1) not believing Bonilla's testimony that he saw Rivera threaten Johnpillai with a shank a day earlier or (2) believing Bonilla's testimony but concluding that Rivera possessed a different shank. Finally, the fact that Officer Seitz found the shank in Johnpillai's pocket, which Johnpillai does not dispute, clearly supports the conclusion that he possessed the shank.
 {¶ 18} We find that this constitutes substantial evidence upon which the jury could reasonably conclude that the state proved the element of possession beyond a reasonable doubt. Thus, after reviewing the entire record, we cannot say that the jury lost its way or created a manifest miscarriage of justice when it found Johnpillai guilty of possession of a deadly weapon while under detention.
 {¶ 19} In conclusion, we find that the record contains sufficient evidence to sustain Johnpillai's conviction and that his conviction is not contrary to the manifest weight of the evidence. Accordingly, we overrule Johnpillai's sole assignment of error and affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec.2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, P.J. and McFarland, J.: Concur in Judgment and Opinion.